# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1857

_____

James Carlton Newton,       *
      *
        Appellee,       *
      *    Appeal from the United States
      v.       *    District Court for the Eastern
      *    District of Arkansas.
Ryder Transportation Services, Inc.,       *
      *
        Appellant.       *

_____

Submitted: January 13, 2000

Filed: March 14, 2000

_____

Before WOLLMAN, Chief Judge, and FLOYD R. GIBSON and MORRIS
     SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

James Newton filed this complaint in diversity, claiming that he suffered injuries because Ryder Transportation Services, Inc., negligently failed to complete certain mechanical repairs to a truck that it leased to Mr. Newton's employer and negligently failed to replace the truck's defective seat belt. The jury returned a verdict in Mr. Newton's favor on both theories and awarded him $204,000, attributing 25 percent of the damages to Ryder's failure to complete the repairs and the remaining 75 percent to Ryder's failure to replace the seat belt. Ryder appeals, arguing that the trial court

erred in refusing to admit the deposition of Sergeant Anthony Parker and in denying Ryder's motion for judgment as a matter of law on the seat belt claim. We reverse and remand the matter for a new trial.

## I.

When Mr. Newton complained to his employer that the truck that he was driving "[p]ulled hard to the right" and that the seat belt on the driver's side was "stuck," his employer requested that Ryder make repairs pursuant to their lease agreement. Although Ryder asserts that it remedied the steering difficulty, it concedes that it was unable to replace the seat belt because the necessary parts were unavailable. A few days after the truck left the Ryder maintenance facility, Mr. Newton was driving it from Arkansas to Mississippi and was involved in a one-vehicle accident that left him with injuries to his thigh.

Sergeant Parker was the first officer at the scene. During his deposition, he was unable to recall the accident even after being presented with a copy of the relevant accident report that he had filled out and signed. He did, however, read the report into the record of his deposition, and he explained what various parts of it meant. According to Sergeant Parker, the report indicated that Mr. Newton stated that he fell asleep behind the wheel and that he was wearing a seat belt at the time of the accident. When Ryder sought to have Sergeant Parker's deposition read into evidence, Mr. Newton objected on the grounds of hearsay, and the trial court sustained the objection.

Mr. Newton maintains, first, that the part of the accident report concerning his statement about falling asleep at the wheel was not relevant because Ryder failed to plead contributory negligence. While Mr. Newton concedes that Ryder has consistently denied responsibility for the accident, he points out that the trial court granted his motion *in limine* to prevent Ryder from asserting contributory negligence as part of its defense, a ruling from which Ryder did not appeal. Mr. Newton argues

that the accident report was relevant only on the issue of his own negligence, and is therefore barred by Ryder's failure to plead affirmative defenses. We disagree.

The verdict form in this case asked the jury to determine whether Ryder "negligently failed to make mechanical repairs which proximately caused plaintiff's injuries." The question of who caused the accident was therefore always at the heart of this case, and we reject Mr. Newton's contention that Ryder's failure to plead the affirmative defense of contributory negligence somehow bars it from presenting evidence that Mr. Newton caused the accident by falling asleep at the wheel. This aspect of the accident report quite obviously goes directly to a principal issue in the case.

Mr. Newton also contends in his brief that, "[s]ince the jury found Ryder's negligence to be a proximate cause of the wreck, the seatbelt argument is now moot." We find his argument unpersuasive because the jury had to determine not only whether Ryder caused injury to Mr. Newton by negligently failing to make the necessary mechanical repairs but also, to quote one of the interrogatories, whether Ryder "negligently failed to replace the seat belt which proximately caused plaintiff's injuries." The jury was therefore presented two separate and distinct inquiries that required independent findings of causation. A finding that Ryder's negligence in not making mechanical repairs caused some injury to Mr. Newton does not answer the question of whether Ryder negligently failed to replace the seat belt and caused other injuries, and therefore does not moot that issue. There was no contention, and there could have been none, that Ryder's failure to replace the seat belt somehow caused the accident.

## II.

Ryder contends that the contents of the accident report were admissible because the information in it qualified as a hearsay exception under Fed. R. Evid. 803(5). That rule permits the admission of a "record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify

fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly." If these predicates are satisfied, the record may then be read into evidence, but it is not itself received as an exhibit. *See generally Greger v. International Jensen, Inc.*, 820 F.2d 937, 943 (8th Cir. 1987).

The rule makes no attempt to spell out a precise method that courts should use for establishing the witness's initial knowledge or the contemporaneity and accuracy of the record in question, but rather leaves these matters to be "dealt with as the circumstances of the particular case might indicate." *See* Fed. R. Evid. 803(5), advisory committee notes to 1972 proposed rules. Mr. Newton argues that the accident report is inadmissible because it is unclear whether Sergeant Parker received the information from Mr. Newton or from some other person. We disagree.

Mr. Newton refers us to *Meder v. Everest and Jennings, Inc.*, 637 F.2d 1182 (8th Cir. 1981), as apposite authority. The police report at issue in that case, however, was prepared by an officer who testified that he could not recall whether the information that he wrote down came from the plaintiff, from someone accompanying the plaintiff, or from a third party who observed the accident. *Id.* at 1185-86. We held that it was error to admit the testimony because the officer "had no knowledge" of the "origin of the statement." *Id.* at 1186.

We believe that *Meder* is inapposite because Sergeant Parker testified that there were no other witnesses and thus that the information in the report concerning Mr. Newton's accident could have come only from Mr. Newton. According to Sergeant Parker, Mr. Newton "told [him] he fell asleep." Sergeant Parker further testified during the deposition that "[he] wouldn't have put it in this block [of the report] if [Mr. Newton] hadn't said that." Sergeant Parker's report also indicates that Mr. Newton was in fact wearing his seat belt at the time of the accident, and Sergeant

-4-

Parker testified that this information was given to him by Mr. Newton either at the accident scene or in the hospital.

Sergeant Parker, an experienced highway patrol officer who routinely prepares reports of this kind, acknowledged that he prepared and signed the report on the day of the accident, that it was accurate to the best of his knowledge, and that the information in it could have come only from Mr. Newton. While it is, of course, the trial court's prerogative to decide whether the necessary factual foundation for the admissibility of evidence has been laid, *see* Fed. R. Evid. 104(a), the court here gave no indication that it disbelieved Sergeant Parker, and we believe that it implicitly indicated that it did believe him. We conclude, therefore, that Ryder established the necessary predicates for the admission of the report under Fed. R. Evid. 803(5) and that the report was therefore admissible. *See Greger*, 820 F.2d at 943.

Mr. Newton maintains that if there was error in the exclusion of the report, it was harmless because the contents of the report were merely cumulative, *see Porchia v. Design Equipment Co.*, 113 F.3d 877, 881 (8th Cir. 1997). Ryder, on the other hand, contends that the trial court's exclusion of the report was prejudicial because it was "relevant to dispute Newton's contention [at trial] that he was not wearing a seatbelt," and because it was "necessary to refute Newton's contention [at trial] that the accident occurred due to the truck pulling hard to the right." We agree with Ryder.

While there were witnesses who testified at trial that Mr. Newton could have worn the seat belt because it was mechanically sound, the excluded report was the only evidence that Mr. Newton in fact stated that he was wearing the seat belt at the time of the accident. The exclusion of the report was therefore clearly prejudicial on this score. Bobby Rice, the trucking manager of Mr. Newton's employer, and Dr. Jeffrey Hubacek, Mr. Newton's emergency room physician, both testified, moreover, that Mr. Newton admitted to them that he fell asleep at the wheel. Although the report repeats the testimony of Mr. Rice and Dr. Hubacek on this issue, it provides important

additional support directly contradicting Mr. Newton's claim that the accident was caused by the truck's mechanical problems. We therefore cannot say that the evidence that the report provided was "merely cumulative" on this point, *cf. Johnson v. Richardson*, 701 F.2d 753, 756 (8th Cir. 1983). We believe that the trial court committed reversible error because the contents of the accident report on both matters was of "a critical nature, so that there is no reasonable assurance that the jury would have reached the same conclusion had the evidence been admitted," *Adams v. Fuqua Industries, Inc.*, 820 F.2d 271, 273 (8th Cir. 1987).

### III.

Ryder asks us to hold that there was insufficient evidence to permit a jury to determine the extent to which the alleged absence of a functioning seat belt increased Mr. Newton's injuries, as required by Arkansas law. The relevant statute provides that the party seeking to show that injuries were caused by not using a seat belt must demonstrate that wearing the seat belt "would have reduced [the] injuries," *see* Ark. Code Ann. § 27-37-703(a)(2)(C)(ii), and must establish "[t]he extent of the reduction of such injuries," *see* Ark. Code Ann. § 27-37-703(a)(2)(C)(iii). *See generally Shelter Mutual Insurance Co. v. Tucker*, 748 S.W.2d 136, 137-38 (Ark. 1988).

At trial, however, Mr. Newton presented the reports of a consulting physician, Dr. Charles Clark, to the jury. Dr. Clark's reports stated that Mr. Newton suffered from a 20 percent impairment, and that the impairment was caused when "[t]he seat belt failed and he jammed his thighs up under the steering wheel," resulting in a "large hematoma in the medial aspect of the [left] thigh." We believe that this and the other trial evidence, including the pictures of the wrecked truck and Mr. Newton's testimony concerning what happened during the accident, was sufficient for the jury to determine the extent to which the alleged absence of a functioning seat belt enhanced Mr. Newton's injuries. *Cf. Potts v. Benjamin*, 882 F.2d 1320, 1322-23 (8th Cir. 1989).

## IV.

For the foregoing reasons, we reverse and remand the matter for a new trial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.